**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br>Plaintiff, | Case No. 1:25-cv-124<br>Litkovitz, M.J. |
| vs. | |
| BRENT ERNSBERGER, *et al.*,<br>Defendants. | **ORDER** |

Plaintiff Joe Hand Promotions, Inc. (JHP) brings this action against defendants Brent Ernsberger, Mark[1] Clyburn, and Sport M&B LLC[2] alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553,[3] 605, and the United States Copyright Act, 17 U.S.C. §§ 106, 501. (Doc. 1). This matter is before the Court on plaintiff's motion for summary judgment on the claims arising under the Communications Act of 1934 against defendants Clyburn and Sport M&B LLC. (Doc. 30). Neither Clyburn nor Sport M&B LLC filed a response. This matter is also before the Court on plaintiff's motion for default judgment against defendant Ernsberger (Doc. 33; *see also* Doc. 19, Entry of Default). Ernsberger did not file a response.

## I. Background

Plaintiff's complaint alleges that defendants Ernsberger and Clyburn, at relevant times, were principal owners, managing members, and operators of defendant Sport M&B LLC, which

---

[1] Plaintiff's complaint names Mark Clyburn while its motion for summary judgment uses the name Mike Clyburn. (Doc. 30). The Court believes "Mike" is a typo. *See* Ohio Sec'y of State, Articles of Organization for Sport M&B LLC No. 201403300049 (Feb. 4, 2014), https://bizimage.ohiosos.gov/api/image/pdf/201403300049 (last visited August 3, 2026).

[2] The parties agreed to voluntarily dismiss defendant Mary Gore on April 22, 2025. (Doc. 12).

[3] Plaintiff concedes that it can only recover under one section and elected to seek damages under 47 U.S.C. § 605 (Doc. 30 at PageID 89). Accordingly, the Court shall not address the issue of liability under § 553. *See Joe Hand Promotions, Inc. v. Young*, No. 1:22-cv-362, 2023 WL 5982824, at *4 (S.D. Ohio Sept. 14, 2023).

operated the commercial establishment doing business as Catch 22 Sports Pub (Catch 22), located at 250 Jefferson Street, Greenfield, Ohio 45123. (Doc. 1 at PageID 3). Plaintiff states that Ernsberger and Clyburn "had the right and ability to supervise the activities of [the] employees of Catch 22. . . ." (*Id.*). Plaintiff also alleges that Ernsberger and Clyburn, as individuals on the liquor license of Catch 22, and Sport M&B LLC, as the corporate operator of Catch 22, "had the obligation to supervise the activities of Catch 22. . . ." (*Id.*).

Plaintiff's complaint further alleges that it was granted the exclusive nationwide commercial distribution rights to two pay-per-view telecasts: UFC 285 Championship Fight, broadcast on March 4, 2023, and UFC 287, broadcast on April 8, 2023 (hereinafter "the Programs"). (*Id.* at PageID 4-5). Plaintiff states that it subsequently entered into sub-licensing agreements with various commercial entities across North America authorizing the public exhibition of the Programs. (*Id.* at PageID 5). Plaintiff alleges that defendants had "full knowledge" that the Programs were "not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so." (*Id.*). Nevertheless, plaintiff alleges that defendants, either directly or through the actions of employees whose conduct is imputable to defendants, "did unlawfully intercept, receive, publish, divulge, display, and/or exhibit" the Programs at Catch 22. (*Id.*). Plaintiff alleges that the unauthorized broadcasts of the Programs resulted in increased profits for Catch 22. (*Id.* at PageID 4). Plaintiff alleges that defendants had "previously unlawfully intercepted, received[,] and exhibited other [e]vents where [p]laintiff held the exclusive commercial rights." (*Id.* at PageID 5). Finally, plaintiff alleges that defendants' unauthorized interception of the Programs was done willfully and for purposes of commercial advantage and/or private financial gain. (*Id.*).

Based upon these allegations, plaintiff asserts claims under 47 U.S.C. § 605 for the unauthorized publication or use of communications and under 47 U.S.C. § 553 for the unauthorized interception, reception, publication, divulgence, display, and/or exhibition of the Programs. (*Id.* at PageID 6-7).[4]

While plaintiff's complaint addresses broadcasts on both March 4, 2023 and April 8, 2023, the pending motions and exhibits solely address the March 4, 2023 event. Therefore, the Court will restrict its analysis of plaintiff's 47 U.S.C. § 605 claims to the March 4, 2023 event (hereinafter "Jones-Gane bout").

## II. Motion for Summary Judgment

Defendants Sport M&B LLC and Clyburn answered plaintiff's complaint on May 14, 2025 (Doc. 14), but they did not oppose plaintiff's motion for summary judgment (Doc. 30), and the time for doing so has expired. *See* S.D. Ohio Civ. R. 7.2(a)(2).

### a. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). The movant

[4] Plaintiff's complaint also asserts a claim under the United States Copyright Act (Doc. 1 at PageID 7), but plaintiff does not move for summary judgment or default on this claim.

may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co. L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89).

The movant bears the burden of demonstrating that no material facts are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's failure to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. *Mongan v. Lykins*, No. 1:09-cv-00626, 2010 WL 2900409, at *3 (S.D. Ohio July 21, 2010) (citing *Guarino*, 980 F.2d at 410; *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The Court's obligation when evaluating an unopposed motion for summary judgment is as follows:

> [T]he Court must review carefully those portions of the submitted evidence designated by the moving party. The Court will not, however, *sua sponte* comb the record from [the non-moving party's] perspective. Instead, the Court may reasonably rely on [the movant's] unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted. If such evidence supports a conclusion that there is no genuine issue of material fact, the Court should determine that [the movants] have carried their burden. . . .

*Id.* at *3 (internal quotations and citations omitted).

**b. Evidence Presented**

Plaintiff proffers the declaration of Joe Hand Jr., the president of JHP (Doc. 30-1 at PageID 104-08), and the affidavit of Darcie Rhodeback, a private investigator retained by JHP. (Doc. 30-2 at PageID 110-11). Plaintiff proffers screenshots of Clyburn and Catch 22's social media advertisements of UFC showings, including the Jones-Gane bout. (Doc. 30-3 at PageID 112; Doc. 30-4 at PageID 113; Doc. 30-6 at PageID 139-48). Plaintiff proffers photographs taken by Rhodeback on March 5, 2023, at Catch 22 that show the Jones-Gane bout being displayed on a television. (Doc. 30-5 at PageID 114-38). Plaintiff also proffers a screenshot of an Ohio Liquor Control Permit Lookup, but the names on the permit are not visible. (Doc. 30-7 at PageID 149).

*Declaration of Joe Hand Jr.*

Joe Hand Jr. states that plaintiff "purchased and retains the commercial exhibition licensing rights" to the Programs. (Hand Jr. Decl., Doc. 30-1 at PageID 104: ¶ 3). Hand Jr. states that plaintiff "marketed the sub-licensing (commercial exhibition) rights in the Programs" to plaintiff's commercial customers. (*Id.*). Hand Jr. states that plaintiff retained "auditors and law enforcement personnel to detect and identify signal pirates." (*Id.* at PageID 105: ¶ 6). To ensure only illegal locations were visited by auditors, Hand Jr. states that plaintiff "compiled confidential lists of customers (authorized and legal locations) who paid the required license fee to broadcast each of the Programs. . . ." (*Id.*). Hand Jr. states that the Programs contained several televised bouts, and according to Rhodeback's affidavit, Catch 22 unlawfully exhibited

the Jones-Gane bout on March 5, 2023. (*Id.* at PageID 105: ¶ 7).[5] Hand Jr. states that commercial establishments are required to pay a sub-license fee based on occupancy; for example, an establishment with a fire-code occupancy of 90-100 persons would pay a fee of $1,095. (*Id.* at PageID 105: ¶ 8). Hand Jr. states that at no time did Catch 22 "ever lawfully license either of the Programs from our company for such a purpose." (*Id.* at PageID 105: ¶ 7).

Hand Jr. states that to the best of his knowledge, "our programming is *not* and cannot be mistakenly, innocently or accidentally intercepted." (*Id.* at PageID 105: ¶ 9). Hand Jr. lists the following methods that a signal pirate can use to intercept and broadcast programming:

> A. The use of a "blackbox", "hotbox", or "pancake box" which is [pur]chased for a fee and when installed on a cable TV line will allow for the descrambled reception of a pay-per-view broadcast, or
>
> B. The use of a "smartcard" or "test card" or "programming card" which is purchased for a fee and when installed on a DSS satellite receiver line will allow for the descrambled reception of a pay-per-view broadcast, or
>
> C. The purposeful misrepresentation of a commercial establishment as a residential property to allow the fraudulent purchase of a pay-per-view (or prohibited) programming at the residential rate, or
>
> D. The use of illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises (which would purchase the broadcast at a residential price and divert the Programs to the commercial establishment), and/or
>
> E. The purchase of other illegal unencryption devices, and the purchase of illegal satellite authorization codes which are readily available on the internet, in trade publications, and through "word of mouth".

(*Id.* at PageID 105-06: ¶ 9). Hand Jr. states that the actions of a signal pirate are "*per se* intentional and do not and cannot occur without . . . willful and/or [intentional] acts purposely designed to obtain our programming unlawfully." (*Id.* at PageID 106: ¶ 13).

[5] The bout began on March 4, 2023 and extended past midnight into March 5, 2023.

Hand Jr. states that upon information and belief, defendants advertised the Jones-Gane bout "by posting the showing on social media" (*id.* at PageID 107: ¶ 15) and references attached screenshots of social media posts made by Clyburn and Catch 22. (Doc. 30-3 at PageID 112, Doc. 30-4 at PageID 113). Hand, Jr. further states that defendants advertised several earlier UFC events on social media, that plaintiff never licensed those events to defendants, and that although plaintiff lacked independent confirmation that the events were shown, he believes it is a fair assumption that defendants also exhibited those events unlawfully. (*Id.* at PageID 108: ¶ 18; *see also* Doc. 30-6 at PageID 139-48).

*Affidavit of Darcie Rhodeback*

Rhodeback states that she entered Catch 22 on March 5, 2023, at approximately 12:30 a.m. (Rhodeback Aff., Doc. 30-2 at PageID 110). Rhodeback states that there was no door person and she paid no cover charge. (*Id.*). Rhodeback observed approximately seven flat-screen televisions, and she observed the first round of the Jones-Gane bout "[o]n the television sets." (*Id.*). Rhodeback described her observations of the broadcast, including that Jon Jones won the bout in the first round by guillotine submission. (*Id.*).

Rhodeback estimated the capacity of Catch 22 Sports Pub to be 90-100 people. (*Id.*). Rhodeback took three head counts while inside, counting between nine and twelve people each time. (*Id.*). Rhodeback states that she took one photograph of the exterior of Catch 22 and six photographs and two videos of the interior of Catch 22. (*Id.* at PageID 111). Rhodeback's photographs are attached to her affidavit and depict the exterior of Catch 22 (Doc. 30-5 at PageID 114) and an interior television displaying the Jones-Gane bout. (*Id.* at PageID 115, 117-38).

**c. 47 U.S.C. § 605**

Section 605(a) of the Communications Act of 1934 "prohibits persons from receiving, transmitting, intercepting, or publishing radio communications without authorization." *Joe Hand Promotions, Inc. v. Damene*, No. 3:23-cv-52, 2024 WL 181855, at *3 (S.D. Ohio Jan. 17, 2024) (citing 47 U.S.C. § 605(a)).[6] Courts have held that § 605(a) can apply to pay-per-view telecasts similar to the Jones-Gane bout at issue in this case. *See, e.g.*, *G & G Closed Circuit Events, LLC v. Grant*, No. 1:24-cv-131, 2025 WL 27376, at *1 (S.D. Ohio Jan. 3, 2025); *Young*, 2023 WL 5982824, at *2.

Persons aggrieved by violations of § 605(a) have a private right of action. 47 U.S.C. § 605(e)(3)(A). A "person aggrieved" includes "any person with proprietary rights in the intercepted communication by wire or radio. . . ." 47 U.S.C. § 605(d)(6). To establish a violation of § 605(a), plaintiff must show that (1) defendants intercepted the transmission of a program; (2) defendants did not pay for the right to receive the transmission; and (3) defendants

[6] Section 605(a) prohibits the following:

> Except as authorized by chapter 119, title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning, of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

displayed the program to the patrons of their commercial establishment. *G & G Closed Circuit Events, LLC*, 2025 WL 27376, at *3 (citing *Joe Hand Promotions, Inc. v. Truong*, No. 3:19-cv-00701, 2020 WL 7014303, at *3 (M.D. Tenn. May 20, 2020)). "Because intercepting and unscrambling a television signal requires an overt act, it is inconceivable that [defendants] could have inadvertently decoded the scrambled signal or accidentally altered cable services to result in the unauthorized broadcast." *Truong*, 2020 WL 7014303, at *6 (quoting *Joe Hand Promotions, Inc. v. Pat's Snack Bar, LLC*, No. 6:19-cv-67, 2020 WL 1923178, at *5 (E.D. Ky. Apr. 21, 2020)). "For individual liability to attach, the plaintiff must establish that the individual had the right and ability to direct the misconduct, as well as a direct financial interest in the misconduct." *Joe Hand Promotions, Inc. v. Essex*, No. 1:20-cv-899, 2022 WL 4182358, at *2 (S.D. Ohio Sept. 13, 2022) (citing *Pat's Snack Bar, LLC*, 2020 WL 1923178, at *3; *J & J Sports Prods., Inc. v. The Green Plantain, Ltd.*, No. 1:12-cv-337, 2013 WL 3322061, at *4 (S.D. Ohio July 1, 2013)). A mere "general statement of ownership" is insufficient to establish individual liability. *J & J Sports Prods., Inc. v. Fisher*, No. 1:12-cv-790, 2013 WL 4482405, at *3 (S.D. Ohio Aug. 20, 2013). Additionally, "a non-willful violation of § 605(a) is a strict liability offense; good faith is no defense." *Joe Hand Promotions, Inc. v. Mathews*, No. 2:22-cv-2593, 2023 WL 2727251, at *2 (S.D. Ohio Mar. 31, 2023) (quoting *Joe Hand Promotions, Inc. v. RPM Mgmt. Co. LLC*, No. 2:11-cv-377, 2011 WL 5389425, at *1 (S.D. Ohio Nov. 7, 2011)).

Here, plaintiff's motion for summary judgment is unopposed, and the undisputed evidence establishes that plaintiff "purchased and retains the commercial exhibition licensing rights" to the Jones-Gane bout and is thereby a person aggrieved under § 605(d)(6). (Hand Jr. Decl., Doc. 30-1 at PageID 104: ¶ 3). The undisputed evidence also establishes that Catch 22 did not "ever lawfully license" the Jones-Gane bout from plaintiff. (*Id.* at PageID 105: ¶ 7).

Plaintiff's private investigator observed and photographed the Jones-Gane bout being displayed to the patrons of Catch 22 on March 5, 2023. (Rhodeback Aff., Doc. 30-2 at PageID 110; Doc. 30-5 at PageID 115, 117-38). And "[b]ecause intercepting and unscrambling a television signal requires an overt act, it is inconceivable" that Catch 22 accidentally received the broadcast of the Jones-Gane bout—Catch 22 must have intercepted the transmission through an overt act. *Truong*, 2020 WL 7014303, at *6 (quoting *Pat's Snack Bar, LLC*, 2020 WL 1923178, at *5). This undisputed evidence establishes each element of a § 605(a) violation: (1) Catch 22 intercepted the transmission of the Jones-Gane bout; (2) Catch 22 did not pay for the right to receive the transmission; and (3) Catch 22 displayed the Jones-Gane bout to its patrons. No intent is required because § 605(a) is a strict liability offense. *G & G Closed Circuit Events, LLC*, 2025 WL 27376, at *3. The Court therefore finds there is no genuine issue of material fact as to liability under § 605(a) against defendant Sport M&B LLC, the corporate owner of Catch 22.

As to Clyburn's individual liability, even though the Secretary of State record was not submitted by plaintiff, the Court may take judicial notice of an official state record under Rule 201(b) of the Federal Rules of Evidence. A district court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See GS Holistic, LLC v. Stars Wireless & Smoke LLC*, No. 1:23-cv-641, 2026 WL 184660, at *3 (S.D. Ohio Jan. 23, 2026) (finding that trademark "[c]ertificates are public records of which the Court may take judicial notice.") (citing *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1321 (C.D. Cal. 2023) (determining that USPTO records "are appropriate subjects for judicial notice because

they constitute matters of public record.”)). Based on that judicially noticed record, the Court finds that the chief executive officer identified in the filing is Clyburn.[7] *See* Ohio Sec’y of State, Articles of Organization for Sport M&B LLC Doc. No. 201403300049 (Feb. 4, 2014), https://bizimage.ohiosos.gov/api/image/pdf/201403300049 (last visited August 3, 2026).

Plaintiff also argues that Clyburn holds the liquor license for Catch 22 (Doc. 30 at PageID 90), but the proffered screenshot of an Ohio Liquor Control Permit Lookup does not show the permit holder’s names. (Doc. 30-7 at PageID 149). Individual liability for an unauthorized broadcast can be established if an individual is listed as the CEO of a business entity on a liquor control permit. *See J & J Sports Prods., Inc. v. Ellan*, No. 2:15-cv-01624, 2016 WL 1170881, at *2 (S.D. Ohio Mar. 25, 2016) (granting summary judgment against the individual defendant because he was listed as the CEO on the liquor control permit); *Fisher*, 2013 WL 4482405, at *3 (granting default judgment only against the business defendant because the plaintiff merely alleged that the individual defendants were “the principals, partners, alter ego, officers, directors, shareholders, employees, agents, and/or other representatives” of the business entity). Clyburn is listed as the CEO of Sport M&B LLC on the liquor control permit on the Ohio Department of Commerce website. *See* Ohio Department of Commerce, *Ownership Disclosure Information*, https://tinyurl.com/u5xuxhcx (Permit Holder Name “SPORT M&B LLC”) (last visited August 3, 2026). *See also* Ohio Sec’y of State, Articles of Organization for Sport M&B LLC Doc. No. 201403300049 (Feb. 4, 2014), at 2, https://bizimage.ohiosos.gov/api/image/pdf/201403300049 (last visited August 3, 2026) (listing Clyburn as the statutory agent for Sport M&B LLC). As the CEO of Sport M&B LLC, the Court

[7] The Court relies on the Secretary of State record only for the limited purpose of identifying the individual designated as Sport M&B LLC’s chief executive officer in the company’s publicly filed organizational records, and not to resolve any disputed factual issue beyond the contents of those public filings.

can infer that Clyburn "patently had a right and ability to control the activities" of Catch 22 and "a direct and obvious financial stake in [Catch 22's] success." *Pat's Snack Bar, LLC*, 2020 WL 1923178, at *3.

Additionally, plaintiff provides evidence of Clyburn's authorization of the Jones-Gane bout by attaching a screenshot of a social media post made by Clyburn advertising the Jones-Gane bout at Catch 22. (Doc. 30-3 at PageID 112). And unlike the defendant business owner in *J & J Sports Prods., Inc. v. The Green Plantain, Ltd*, who rebutted authorizing a broadcast in his affidavit, Clyburn did not respond to plaintiff's motion and submitted no such evidence. *The Green Plantain, Ltd.*, 2013 WL 3322061, at *5. The Court finds there is no genuine issue of material fact as to liability under § 605(a) against defendant Clyburn.

## III. Motion for Default Judgment

Plaintiff's complaint was served on defendant Ernsberger on April 25, 2025. (Doc. 13). Ernsberger failed to respond to the complaint, and on May 28, 2025, plaintiff filed an application to the Clerk of Court for an entry of default. (Doc. 18). The Clerk entered default on May 29, 2025. (Doc. 19). Plaintiff filed a motion for default judgment against Ernsberger on June 29, 2026. (Doc. 33). No memorandum in opposition to plaintiff's motion has been filed, and the time for doing so has expired. *See* S.D. Ohio Civ. R. 7.2(a)(2).

### a. Default Judgment Standard

Under Fed. R. Civ. P. 55(b)(2), a court may enter default judgment against a party whose default has been entered by the Clerk. "Once default has been entered, a defaulting defendant is considered to have admitted all the well-pleaded allegations relating to liability." *Bds. of Trs. of Ohio Laborers' Fringe Benefit Programs v. RMH Concrete & Founds., Inc.*, No. 2:16-cv-721, 2016 WL 7111603, at *2 (S.D. Ohio Dec. 7, 2016) (Report and Recommendation) (citing

*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)), *adopted*, 2017 WL 87056 (S.D. Ohio Jan. 9, 2017). "Although the well-pled factual allegations of a complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts state a claim upon which relief may be granted." *Canal Ins. Co. v. MS Express, LLC*, No. 2:24-cv-1969, 2024 WL 4973430, at *6 (S.D. Ohio Dec. 4, 2024) (citations omitted).

**b. Analysis of 47 U.S.C. § 605 Liability**

Ernsberger is listed as an authorized agent and/or member of Sport M&B LLC. *See* Ohio Sec'y of State, Articles of Organization for Sport M&B LLC Doc. No. 201403300049 (Feb. 4, 2014), at 3, https://bizimage.ohiosos.gov/api/image/pdf/201403300049 (last visited August 3, 2026). As discussed *supra*, the Court is entitled to judicially notice an official state record for the limited purpose of identifying Ernsberger as a member, manager, or other representative of Sport M&B LLC in the company's publicly filed organizational records, and not to resolve any disputed factual issue beyond the contents of those public filings. *See* Fed. R. Evid. 201(b); *GS Holistic, LLC*, 2026 WL 184660, at *3 (citing *EVO Brands, LLC*, 657 F. Supp. 3d at 1321).

Based on the admitted factual allegations in the complaint, which the Court accepts as true, plaintiff has established that defendant Ernsberger is liable for violating § 605. *See G & G Closed Circuit Events, LLC*, 2025 WL 27376, at *2 (citing *Hawkins v. Franklin Cnty. Sheriff's Off.*, No. 2:13-cv-186, 2015 WL 1647033, at *2 (S.D. Ohio Apr. 14, 2015) and *Williams v. Rudin*, No. 1:11-cv-01103, 2012 WL 3562134, at *1 (W.D. Tenn. July 31, 2012), *report and recommendation adopted*, 2012 WL 3562106 (W.D. Tenn. Aug. 16, 2012)).

First, plaintiff is a person aggrieved under § 605(d)(6) because it was granted the exclusive nationwide commercial distribution rights to the Jones-Gane bout. (Doc. 1 at PageID 4-5). Next, the complaint alleges that Ernsberger is a principal owner, managing member, and

operator of Sport M&B LLC, and through that company, operated Catch 22. (*Id.* at PageID 3). The complaint alleges that Ernsberger had "full knowledge" that the Jones-Gane bout was "not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so." (*Id*. at PageID 5). The complaint also alleges that Ernsberger, either directly or through the actions of employees whose conduct is imputable to Ernsberger, "did unlawfully intercept, receive, publish, divulge, display, and/or exhibit" the Jones-Gane bout at Catch 22. (*Id.* at PageID 5). And "[b]ecause intercepting and unscrambling a television signal requires an overt act, it is inconceivable" that the broadcast of the Jones-Gane bout was accidental—it must have been intercepted. *Truong*, 2020 WL 7014303, at *6 (quoting *Pat's Snack Bar, LLC*, 2020 WL 1923178, at *5). It is therefore established that Ernsberger or the employees of Catch 22 (1) intercepted the transmission of the Jones-Gane bout; (2) did not pay for the right to receive the transmission; and (3) displayed the Jones-Gane bout to Catch 22's patrons. *See G & G Closed Circuit Events, LLC*, 2025 WL 27376, at *3.

The complaint further establishes Ernsberger's individual liability for a § 605 violation by stating that the unauthorized broadcast of the Jones-Gane bout was "supervised and/or authorized" by Ernsberger and that Ernsberger had an "obvious and direct financial interest in the activities of Catch 22 . . . which included the unlawful interception of [the Jones-Gane bout]." (Doc. 1 at PageID 4). Plaintiff is therefore entitled to default judgment against Ernsberger. *See G & G Closed Circuit Events, LLC*, 2025 WL 27376, at *4.

## IV. Conclusion

For the foregoing reasons, the Court finds plaintiff is entitled to summary judgment against defendants Sport M&B LLC and Clyburn and default judgment against Ernsberger. The Court will address damages and attorney fees in a subsequent Order.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion for summary judgment (Doc. 30) is **GRANTED** against defendants Sport M&B LLC and Mark Clyburn on plaintiff's 47 U.S.C. § 605 claim.
2. Plaintiff is **ORDERED** to either dismiss its copyright claim under 17 U.S.C. § 106 against defendants Sport M&B LLC and Mark Clyburn or to move for summary judgment on this claim **WITHIN TWENTY-ONE DAYS** of this Order. Failure to dismiss or so move will result in the Court sua sponte dismissing this claim without prejudice without further warning.
3. Plaintiff's motion for default judgment (Doc. 33) is **GRANTED** against defendant Brent Ernsberger on plaintiff's 47 U.S.C. § 605 claim.
4. Plaintiff is **ORDERED** to either dismiss its copyright claim under 17 U.S.C. § 106 against defendant Brent Ernsberger or to move for default judgment on this claim **WITHIN TWENTY-ONE DAYS** of this Order. Failure to dismiss or so move will result in the Court sua sponte dismissing this claim without prejudice without further warning.
5. Plaintiff shall file an affidavit in support of its request for attorney fees and costs on or before August 28, 2026.

Date: 8/18/2026

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge